# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

VOTE.ORG; FLORIDA ALLIANCE
FOR RETIRED AMERICANS;
FLORIDA STATE CONFERENCE
OF BRANCHES AND YOUTH
UNITS OF THE NAACP,

     *Plaintiffs*,

v.

CORD BYRD, in his official capacity
as Secretary of State of Florida; KIM
BARTON, in her official capacity as
Supervisor of Elections for Alachua
County; CHRISTOPHER MILTON, in
his official capacity as Supervisor of
Elections for Baker County; MARK
ANDERSEN, in his official capacity as
Supervisor of Elections for Bay
County; AMANDA SEYFANG, in her
official capacity as Supervisor of
Elections for Bradford County; TIM
BOBANIC, in his official capacity as
Supervisor of Elections for Brevard
County; JOE SCOTT, in his official
capacity as Supervisor of Elections for
Broward County; SHARON
CHASON, in her official capacity as
Supervisor of Elections for Calhoun
County; LEAH VALENTI, in her
official capacity as Supervisor of
Elections for Charlotte County;
MAUREEN "MO" BAIRD, in her
official capacity as Supervisor of

Case No. 1:23-cv-_____

Elections for Citrus County; CHRIS H.
CHAMBLESS, in his official capacity
as Supervisor of Elections for Clay
County; JENNIFER J. EDWARDS, in
her official capacity as Supervisor of
Elections for Collier County; TOMI
STINSON BROWN, in her official
capacity as Supervisor of Elections for
Columbia County; MARK F.
NEGLEY, in his official capacity as
Supervisor of Elections for DeSoto
County; STARLET CANNON, in her
official capacity as Supervisor of
Elections for Dixie County; MIKE
HOGAN, in his official capacity as
Supervisor of Elections for Duval
County; DAVID H. STAFFORD, in
his official capacity as Supervisor of
Elections for Escambia County; KAITI
LENHART, in her official capacity as
Supervisor of Elections for Flagler
County; HEATHER RILEY, in her
official capacity as Supervisor of
Elections for Franklin County;
SHIRLEY G. KNIGHT, in her official
capacity as Supervisor of Elections for
Gadsden County; CONNIE
SANCHEZ, in her official capacity as
Supervisor of Elections for Gilchrist
County; ALETRIS FARNAM, in her
official capacity as Supervisor of
Elections for Glades County; JOHN
HANLON, in his official capacity as
Supervisor of Elections for Gulf
County; LAURA HUTTO, in her
official capacity as Supervisor of
Elections for Hamilton County;

DIANE SMITH, in her official capacity as Supervisor of Elections for Hardee County; BRENDA HOOTS, in her official capacity as Supervisor of Elections for Hendry County; SHIRLEY ANDERSON, in her official capacity as Supervisor of Elections for Hernando County; KAREN HEALY, in her official capacity as Supervisor of Elections for Highlands County; CRAIG LATIMER, in his official capacity as Supervisor of Elections for Hillsborough County; THERISA MEADOWS, in her official capacity as Supervisor of Elections for Holmes County; LESLIE ROSSWAY SWAN, in her official capacity as Supervisor of Elections for Indian River County; CAROL A. DUNAWAY, in her official capacity as Supervisor of Elections for Jackson County; MICHELLE MILLIGAN, in her official capacity as Supervisor of Elections for Jefferson County; TRAVIS HART, in his official capacity as Supervisor of Elections for Lafayette County; ALAN HAYS, in his official capacity as supervisor of Elections for Lake County; TOMMY DOYLE, in his official capacity as Supervisor of Elections for Lee County; MARK S. EARLEY, in his official capacity as Supervisor of Elections for Leon County; TAMMY JONES, in her official capacity as Supervisor of Elections for Levy County; GRANT CONYERS, in his

official capacity as Supervisor of
Elections for Liberty County; HEATH
DRIGGERS, in his official capacity as
Supervisor of Elections for Madison
County; MICHAEL BENNETT, in his
official capacity as Supervisor of
Elections for Manatee County;
WESLEY WILCOX, in his official
capacity as Supervisor of Elections for
Marion County; VICKI DAVIS, in her
official capacity as Supervisor of
Elections for Martin County;
CHRISTINA WHITE, in her official
capacity as Supervisor of Elections for
Miami-Dade County; JOYCE
GRIFFIN, in her official capacity as
Supervisor of Elections for Monroe
County; JANET H. ADKINS, in her
official capacity as Supervisor of
Elections for Nassau County; PAUL A.
LUX, in his official capacity as
Supervisor of Elections for Okaloosa
County; MELISSA ARNOLD, in her
official capacity as Supervisor of
Elections for Okeechobee County;
BILL COWLES, in his official
capacity as Supervisor of Elections for
Orange County; MARY JANE
ARRINGTON, in her official capacity
as Supervisor of Elections for Osceola
County; WENDY SARTORY LINK,
in her official capacity as Supervisor of
Elections for Palm Beach County;
BRIAN E. CORLEY, in his official
capacity as Supervisor of Elections for
Pasco County; JULIE MARCUS, in
her official capacity as Supervisor of

Elections for Pinellas County; LORI
EDWARDS, in her official capacity as
Supervisor of Elections for Polk
County; CHARLES OVERTURF, in
his official capacity as Supervisor of
Elections for Putnam County; TAPPIE
A. VILLANE, in her official capacity
as Supervisor of Elections for Santa
Rosa County; RON TURNER, in his
official capacity as Supervisor of
Elections for Sarasota County; CHRIS
ANDERSON, in his official capacity
as Supervisor of Elections for Seminole
County; VICKY OAKES, in her
official capacity as Supervisor of
Elections for St. Johns County;
GERTRUDE WALKER, in her official
capacity as Supervisor of Elections for
St. Lucie County; WILLIAM KEEN,
in his official capacity as Supervisor of
Elections for Sumter County;
JENNIFER MUSGROVE KINSEY, in
her official capacity as Supervisor of
Elections for Suwannee County;
DANA SOUTHERLAND, in her
official capacity as Supervisor of
Elections for Taylor County;
DEBORAH K. OSBORNE, in her
official capacity as Supervisor of
Elections for Union County; LISA
LEWIS, in her official capacity as
Supervisor of Elections for Volusia
County; JOSEPH MORGAN, in his
official capacity as Supervisor of
Elections for Wakulla County; RYAN
MESSER, in his official capacity as
Supervisor of Elections for Walton

County; CAROL F. RUDD, in her
official capacity as Supervisor of
Elections for Washington County,

*Defendants.*

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Vote.org, Florida Alliance for Retired Americans, and Florida State Conference of Branches and Youth Units of the NAACP file this Complaint for Declaratory and Injunctive Relief against the Secretary of State of Florida in his official capacity and Florida's 67 Supervisors of Elections ("Supervisor Defendants"), each in their official capacities as Supervisors for their respective counties. Plaintiffs allege as follows:

### NATURE OF THE CASE

1.     This action challenges the unlawful practice of rejecting voter registration applications signed by qualified voters based solely on how the application is signed. The Civil Rights Act of 1964 prohibits election officials from conditioning the right to vote on compliance with meaningless and arbitrary requirements. Florida and its election officials regularly violate this prohibition by requiring some—but not all—prospective voters to submit a physical copy of their voter registration application to election officials with an "original" signature that

has been handwritten by the voter onto the application (the "Wet Signature Requirement"). *See* Fla. Stat. § 97.053(5)(a)(8).

2.      Florida law generally treats digital or electronic signatures as equal in all ways to wet signatures, and most Floridians can submit their voter registration application online with a digital signature. Other Florida citizens are denied this opportunity for reasons having nothing to do with their qualifications as Florida voters. This restriction serves no purpose other than to impede some Floridians' right to vote.

3.      The constitutional right to vote is fundamental and "preservative of all rights." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)). To secure this fundamental right, the Civil Rights Act of 1964 prohibits election officials from denying any individual access to the franchise because of an "error or omission on any record or paper relating to any application" that is "not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B) (the "Materiality Provision").

4.      To vote in Florida, a person must be 18 years old, a citizen of the United States, a legal resident of Florida and the county in which they wish to register, and must register to vote. Fla. Stat. § 97.041(1). In addition, any person who has been adjudicated mentally incapacitated or convicted of a felony cannot register unless

their right to vote has been restored. *Id.* § 97.041(2). The Wet Signature Requirement bears no relation to these qualifications and does not serve any purpose for which a digital, electronic, or facsimile signature would not suffice. Because the type of signature on a qualified voters' voter registration application provides no insight into a voter's qualifications and serves no purpose other than to deny some Floridians their constitutional right to vote, the Wet Signature Requirement violates the Civil Rights Act.

5.      This Court should declare that the Wet Signature Requirement violates the Civil Rights Act and enjoin Defendants from enforcing the Wet Signature Requirement in the future.

## JURISDICTION AND VENUE

6.      Plaintiffs bring this action under 52 U.S.C. § 10101(a)(2)(B) and 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Civil Rights Act.

7.      This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the laws of the United States and involve the assertion of a deprivation, under color of state law, of rights secured under federal law.

8.      This Court has personal jurisdiction over Defendants, who are sued in their official capacities.

9.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendants are residents of Florida and numerous Defendants reside in this judicial district. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to Plaintiffs' claim occurred and will occur in this judicial district.

10.     This Court has the authority to provide declaratory and injunctive relief under Federal Rules of Civil Procedure 57 and 65, as well as 28 U.S.C. §§ 2201 and 2202.

## PARTIES

11.     Plaintiff Vote.org is the largest 501(c)(3) nonprofit, nonpartisan voter registration and get-out-the-vote ("GOTV") technology platform in the country. Vote.org uses technology to simplify political engagement, increase voter turnout, and strengthen American democracy. Vote.org works extensively to support low-propensity voters, including racial and ethnic minorities and younger voters who tend to have lower voter-turnout rates. Nationally, Vote.org has helped more than 7.3 million users start the registration process and helped more than 18 million voters verify their registration statuses. In Florida, Vote.org has helped register over 390,000 voters since 2016.

12.     Vote.org has invested significant resources in developing an e-signature function of its web application to help voters complete their registration

forms, which it would like to offer to Florida citizens, just as it has done in Alaska, Colorado, the District of Columbia, Kansas, South Carolina, and Texas. The e-signature function of Vote.org's web application would allow potential registrants in Florida who cannot use Florida's online registration system to enter information into a digital voter registration application; sign the application by uploading an image of their original signature; review their signed voter registration application; and send the completed application to the appropriate voter registration official. Not only would this assist voters, it would also reduce the resources required of Vote.org's registration activities in Florida, allowing such resources to be reallocated to expanded registration efforts and GOTV projects.

13.     Plaintiff Florida Alliance for Retired Americans ("Florida Alliance") is incorporated as a 501(c)(3) nonprofit, social welfare organization. It has tens of thousands of members, including retirees from public and private sector unions, community organizations, and individual activists, and is a chartered state affiliate of the Alliance for Retired Americans. Florida Alliance's mission is to ensure social and economic justice and full civil rights that retirees have earned after a lifetime of work.

14.     Florida Alliance's members are retirees, many of whom are older, struggle with mobility and manual dexterity, and may no longer drive a vehicle. For these members, the requirement that they physically sign an application form with

wet ink and submit it to an appropriate election official represents a significant burden on their right to vote. This is particularly true of those members that lack access to a printer.

15.    Plaintiff Florida State Conference of Branches and Youth Units of the NAACP ("Florida NAACP") is a nonprofit, nonpartisan civil rights organization in Florida. Founded in 1909, Florida NAACP is the oldest civil rights organization in Florida, and serves as the umbrella organization for local branch units throughout the state. Florida NAACP's 12,000 members are predominantly Black and other minority individuals throughout the state. Its mission is to ensure the political, social, educational, and economic equality of all persons, and to eliminate race-based discrimination.

16.    For decades the Florida NAACP has engaged heavily in statewide voter registration, public education, and advocacy to encourage civic and electoral participation among its members and other voters. For example, Florida NAACP works to register voters by holding registration events in coordination with local partners such as the Divine-Nine Pan-Hellenic Council, the Links, Masonic Lodges, and others. Florida NAACP also works with churches and other faith-based organizations to register voters within the communities it serves.

17.    Florida NAACP engages in other voting related advocacy as well, such as facilitating professionally led trainings to help its members understand election-

related bills, amendments, and other issues affecting the voting process. Florida NAACP also holds get-out-the-vote events, such as "souls to the polls" events, where Florida NAACP offers food, drinks, entertainment, and—most importantly—transportation from local churches to polling places. Outside of the electoral sphere, Florida NAACP also engages in advocacy work involving health care, criminal justice, the school-to-prison pipeline, education, environmental justice, climate change, and the economy.

18.    As with all organizations, Florida NAACP draws from a limited pool of resources. And thus, every bit of effort spent in one area necessarily detracts from the amount of effort that Florida NAACP can direct to others.

19.    The Wet Signature Requirement forces Florida NAACP to help some—but not all—registrants print, sign, and physically return their voter registration application. Florida NAACP must divert time, money, and resources away from other activities, such as programming and initiatives concerning educational inequities, the school-to-prison pipeline, and mass incarceration, in order to assist its members and other Florida voters who have difficulty registering to vote because of the Wet Signature Requirement.

20.    In addition to the harms to the Plaintiff organizations outlined above, the Wet Signature Requirement threatens to deny members of the Florida Alliance and Florida NAACP the opportunity to vote. Some members of these organizations

lack easy access to a printer or may otherwise have difficulty printing, signing, and returning a voter registration application. The Wet Signature Requirement forces such members to complete multiple burdensome steps in order to obtain, fill out, and return their application. On top of being burdensome, this process has multiple points of failure or delay that may prevent these Plaintiffs' members from registering to vote.

21.    Because of Defendants' direct roles in enforcing the Wet Signature Requirement, discussed below, the injuries to Plaintiffs and their members are directly traceable to Defendants and redressable by an injunction against them. If this Court enjoined Defendants from enforcing the Wet Signature requirement, all—rather than just some—qualified voters, including members of the Florida Alliance and Florida NAACP, could submit their applications through a host of more efficient, electronic channels. That, in turn, would allow Vote.org and Florida NAACP to reallocate their diverted resources to other mission-critical projects.

22.    Defendant Cord Byrd, who is sued in his official capacity only, is the Secretary of State of Florida. The Secretary of State is Florida's chief election officer. His responsibilities include, but are not limited to, maintaining uniformity of the interpretation and implementation of election laws; providing uniform standards for the proper and equitable implementation of the registration laws; administering a statewide voter registration system; and providing written direction

to supervisors of elections on the performance of their official duties. *See* Fla. Stat. § 97.012. In addition, the Secretary of State has authority to designate "voter registration officials," including but not limited to supervisors of elections, "to accept voter registration applications and execute updates to the statewide voter registration system." Fla. Stat. § 97.021(45); *see also id.* § 97.053(2) ("A voter registration application is complete and becomes the official voter registration record of that applicant when all information necessary to establish the applicant's eligibility pursuant to s. 97.041 is received by a voter registration official.").

23. Supervisor Defendants, who are sued in their official capacities only, are responsible for administering elections in each of Florida's 67 counties. Their responsibilities include, but are not limited to, processing voter registration applications and notifying voters of the disposition of their applications. *See id.* §§ 97.073(1), 98.045(1). Supervisor Defendants are: KIM BARTON, in her official capacity as Supervisor of Elections for Alachua County; CHRISTOPHER MILTON, in his official capacity as Supervisor of Elections for Baker County; MARK ANDERSEN, in his official capacity as Supervisor of Elections for Bay County; AMANDA SEYFANG, in her official capacity as Supervisor of Elections for Bradford County; TIM BOBANIC, in his official capacity as Supervisor of Elections for Brevard County; JOE SCOTT, in his official capacity as Supervisor of Elections for Broward County; SHARON CHASON, in her official capacity as

Supervisor of Elections for Calhoun County; LEAH VALENTI, in her official capacity as Supervisor of Elections for Charlotte County; MAUREEN "MO" BAIRD, in her official capacity as Supervisor of Elections for Citrus County; CHRIS H. CHAMBLESS, in his official capacity as Supervisor of Elections for Clay County; JENNIFER J. EDWARDS, in her official capacity as Supervisor of Elections for Collier County; TOMI STINSON BROWN, in her official capacity as Supervisor of Elections for Columbia County; MARK F. NEGLEY, in his official capacity as Supervisor of Elections for DeSoto County; STARLET CANNON, in her official capacity as Supervisor of Elections for Dixie County; MIKE HOGAN, in his official capacity as Supervisor of Elections for Duval County; DAVID H. STAFFORD, in his official capacity as Supervisor of Elections for Escambia County; KAITI LENHART, in her official capacity as Supervisor of Elections for Flagler County; HEATHER RILEY, in her official capacity as Supervisor of Elections for Franklin County; SHIRLEY G. KNIGHT, in her official capacity as Supervisor of Elections for Gadsden County; CONNIE SANCHEZ, in her official capacity as Supervisor of Elections for Gilchrist County; ALETRIS FARNAM, in her official capacity as Supervisor of Elections for Glades County; JOHN HANLON, in his official capacity as Supervisor of Elections for Gulf County; LAURA HUTTO, in her official capacity as Supervisor of Elections for Hamilton County; DIANE SMITH, in her official capacity as Supervisor of Elections for

Hardee County; BRENDA HOOTS, in her official capacity as Supervisor of Elections for Hendry County; SHIRLEY ANDERSON, in her official capacity as Supervisor of Elections for Hernando County; KAREN HEALY, in her official capacity as Supervisor of Elections for Highlands County; CRAIG LATIMER, in his official capacity as Supervisor of Elections for Hillsborough County; THERISA MEADOWS, in her official capacity as Supervisor of Elections for Holmes County; LESLIE ROSSWAY SWAN, in her official capacity as Supervisor of Elections for Indian River County; CAROL A. DUNAWAY, in her official capacity as Supervisor of Elections for Jackson County; MICHELLE MILLIGAN, in her official capacity as Supervisor of Elections for Jefferson County; TRAVIS HART, in his official capacity as Supervisor of Elections for Lafayette County; ALAN HAYS, in his official capacity as Supervisor of Elections for Lake County; TOMMY DOYLE, in his official capacity as Supervisor of Elections for Lee County; MARK S. EARLEY, in his official capacity as Supervisor of Elections for Leon County; TAMMY JONES, in her official capacity as Supervisor of Elections for Levy County; GRANT CONYERS, in his official capacity as Supervisor of Elections for Liberty County; HEATH DRIGGERS, in his official capacity as Supervisor of Elections for Madison County; MICHAEL BENNETT, in his official capacity as Supervisor of Elections for Manatee County; WESLEY WILCOX, in his official capacity as Supervisor of Elections for Marion County; VICKI DAVIS, in her official capacity as Supervisor

of Elections for Martin County; CHRISTINA WHITE, in her official capacity as Supervisor of Elections for Miami-Dade County; JOYCE GRIFFIN, in her official capacity as Supervisor of Elections for Monroe County; JANET H. ADKINS, in her official capacity as Supervisor of Elections for Nassau County; PAUL A. LUX, in his official capacity as Supervisor of Elections for Okaloosa County; MELISSA ARNOLD, in her official capacity as Supervisor of Elections for Okeechobee County; BILL COWLES, in his official capacity as Supervisor of Elections for Orange County; MARY JANE ARRINGTON, in her official capacity as Supervisor of Elections for Osceola County; WENDY SARTORY LINK, in her official capacity as Supervisor of Elections for Palm Beach County; BRIAN E. CORLEY, in his official capacity as Supervisor of Elections for Pasco County; JULIE MARCUS, in her official capacity as Supervisor of Elections for Pinellas County; LORI EDWARDS, in her official capacity as Supervisor of Elections for Polk County; CHARLES OVERTURF, in his official capacity as Supervisor of Elections for Putnam County; TAPPIE A. VILLANE, in her official capacity as Supervisor of Elections for Santa Rosa County; RON TURNER, in his official capacity as Supervisor of Elections for Sarasota County; CHRIS ANDERSON, in his official capacity as Supervisor of Elections for Seminole County; VICKY OAKES, in her official capacity as Supervisor of Elections for St. Johns County; GERTRUDE WALKER, in her official capacity as Supervisor of Elections for St. Lucie County;

WILLIAM KEEN, in his official capacity as Supervisor of Elections for Sumter County; JENNIFER MUSGROVE KINSEY, in her official capacity as Supervisor of Elections for Suwannee County; DANA SOUTHERLAND, in her official capacity as Supervisor of Elections for Taylor County; DEBORAH K. OSBORNE, in her official capacity as Supervisor of Elections for Union County; LISA LEWIS, in her official capacity as Supervisor of Elections for Volusia County; JOSEPH MORGAN, in his official capacity as Supervisor of Elections for Wakulla County; RYAN MESSER, in his official capacity as Supervisor of Elections for Walton County; and CAROL F. RUDD, in her official capacity as Supervisor of Elections for Washington County.

## STATEMENT OF FACTS AND LAW

24.    Florida law establishes a two-tiered registration system that preferences certain Floridians over others based on factors bearing no relevance to their qualifications to vote.

25.    To qualify as a voter, a person must (1) be at least 18 years old (or 16 years old if the applicant seeks to "pre-register"); (2) be a United States citizen; (3) be a legal resident of Florida; (4) be a legal resident of the county in which the person seeks to register; and (5) register pursuant to the Florida Election Code. Fla. St. § 97.041(1). Those who are unregistered may not vote, nor may those who have been adjudicated mentally incapacitated with respect to voting or convicted of a felony,

unless his or her right to vote has been restored. *Id.* § 97.041(2)-(3).

26.    The Florida Voter Registration Act requires the Department of State to "prescribe by rule a uniform statewide voter registration application." Fla. Stat. § 97.052(1). In addition to capturing identifying and demographic information, the application "must be designed to elicit" the "[s]ignature of [the] applicant under penalty for false swearing pursuant to s. 104.011, by which the person subscribes to the oath required by s. 3, Art. VI of the State Constitution and s. 97.051, and swears or affirms that the information contained in the registration application is true" (the "Signature Requirement"). *Id.* § 97.052(2)(q).

27.    In addition to confirming that the information in the application is true, the oath requires the applicant to swear or affirm that the applicant will protect and defend the U.S. and Florida Constitutions, and that the applicant is qualified to register to vote. *Id.* § 97.052(1); Fla. Const. art. VI, § 3.

28.    Neither the Florida Constitution nor § 97.052, which describes the required application elements, specifies any particular method by which the applicant's signature must be obtained or submitted.

29.    In 2005, Florida amended a separate provision of the Election Code governing the acceptance of voter registration applications to provide that a registration application is "complete" only if it contains "[t]he original signature or a digital signature transmitted by the Department of Highway Safety and Motor

Vehicles of the applicant." Fla. Stat. § 97.053(5)(a)(8).

30.    Floridians who submit their voter registration application through the Department of Highway Safety and Motor Vehicles ("DMV") can satisfy the Signature Requirement with an electronic signature. *See* Fla. Stat. § 97.057(2)(b)(1)(c) (voter registering at DMV must "provide an electronic signature affirming the accuracy of the information" on the application).

31.    Individuals who have a Florida driver's license or identification card may submit their application online through the Florida Department of State's Online Voter Registration System. *See* Fla. Stat. § 97.0525; Fla. Dep't of State, *Florida Online Registration System*, https://registertovoteflorida.gov/home (last visited Mar. 15, 2023). If the applicant's name, date of birth, and Florida driver's license number or identification number match the records maintained by the DMV, then the online voter registration system transmits the applicant's digital signature and online voter registration application to the supervisor of elections for processing. *Id.* § 97.0525(4)(a)-(b). This digital signature likewise satisfies the Signature Requirement. *Id.*

32.    Floridians without a Florida driver's license or identification card, however, cannot rely on an electronic or digital signature and instead must provide an "original signature." Fla. Stat. § 97.053(5)(a)(8).

- 20 -

33.     Although Florida law does not define the term "original signature," it is widely interpreted to mean a wet-ink signature. For example, in 2021, the Director of the Division of Elections, Maria Matthews, issued an advisory opinion interpreting an "original signature" requirement for constitutional amendment initiative petition forms to mean "a signature signed directly onto the paper in wet-ink[.]" Florida Department of State, DE 21-01 (Mar. 15, 2021) (attached as Ex. 1). In this same advisory opinion, Director Matthews referenced the "original signature" language pertaining to voter registration in § 97.053(5)(a)(8) as supporting this interpretation.

34.     Supervisors of Elections have also interpreted "original signature" to mean a signature using wet ink. *See, e.g.*, Lake County Supervisor of Elections, *Register to Vote*, https://www.lakevotes.com/Register-to-Vote (last visited Mar. 15, 2023) (explaining that voter-registration applications not submitted through the Online Voter Registration System must contain the "applicant's original signature" and "therefore, new application forms received by e-mail or fax are not valid and cannot be accepted"); Collier County Supervisor of Elections, *Voter Signature FAQ*, https://www.colliervotes.gov/FAQ/Voter-Signature-FAQ (last visited Mar. 15, 2023) (updating signature in voter file "requires an original signature (not electronic)"); Pinellas County Supervisor of Elections, *Register to Vote*, https://www.votepinellas.gov/Election-Information/Voter-Registration/Voter-

Registration-Application (last visited Mar. 15, 2023) ("Registration applications cannot be accepted by email or fax.").

35.     If the applicant fails to provide an "original signature," the application will be deemed incomplete and rejected—even if the voter is qualified and submits a signed application. Fla. Stat. § 97.053(2), (5)(a)(8); *id.* § 98.045(1)(a). The applicant consequently will be denied the right to vote based solely on the method by which they signed their registration application. *See id.* § 97.041(3).

## CLAIM FOR RELIEF

### COUNT I

**52 U.S.C. § 10101; 42 U.S.C. § 1983**
**Violation of 52 U.S.C. § 10101(a)(2)(B)**
**Against All Defendants**

36.     Plaintiffs reallege and incorporate by reference paragraphs 1-35 of this Complaint as though fully set forth herein.

37.     The Materiality Provision of the Civil Rights Act of 1964 provides:

> [n]o person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).

38.     The Civil Rights Act defines the right to "vote" in this context broadly, including:

> all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election.

*Id.* § 10101(a)(3)(A), (e).

39.     The Materiality Provision is "designed to eliminate practices that could encumber an individual's ability to *register* to vote." *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1370–71 (S.D. Fla. 2004) (emphasis in original) (citing *Schwier v. Cox*, 340 F.3d 1284, 1297 (11th Cir. 2003)).

40.     Plaintiffs have a private right of action to seek relief when states fail to comply with the requirements of the Materiality Provision. *See Schwier*, 340 F.3d at 1297.

41.     Defendants' enforcement of the Wet Signature Requirement violates the plain language of the Materiality Provision. First, Defendants—elections officials acting pursuant to authority provided to them by the state—are "persons" acting "under color of law." *See Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001) (holding that a city manager was acting under color of law under 42 U.S.C. § 1983 when he acted "pursuant to the power he [] possessed by state authority") (citing *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1523 (11th Cir. 1995)); *see also United States v. Holmes Cnty.*, 385 F.2d 145, 148 (5th Cir. 1967)

(holding that "person" bears same meaning in both 52 U.S.C. § 10101 (formerly 42 U.S.C. § 1971) and 42 U.S.C. § 1983).

42.     Second, the Wet Signature Requirement denies Floridians their right to vote based upon an "omission" on a "record or paper" relating to "registration." 52 U.S.C. § 10101(a)(2)(B). The omission in question is the failure of an elector to provide an original signature on the voter registration application. A voter registration application is a "record or paper" related to an "application, registration, or other act requisite to voting" as described by the plain language of the statute. Submitting a valid and complete voter registration application is "an act requisite to voting" under Florida law. Fla. Stat. § 97.041(1)(a)(5), (3).

43.     Third, the Wet Signature Requirement is immaterial to determining whether an applicant is qualified to vote in Florida. To qualify as a Florida voter, a person must (1) be at least 18 years old (or 16 years old if the applicant seeks to "pre-register"); (2) be a United States citizen; (3) be a legal resident of Florida and (4) of the county in which the person seeks to register; and (5) register pursuant to the Florida Election Code. Fla. Stat. § 97.041. (Otherwise qualified individuals who have been adjudicated incapacitated or convicted of a felony may not register or vote.) The method of signing a voter registration application bears no relation to the statutory qualifications and does not serve any purpose for which a digital or

electronic signature would not suffice, as evidenced by the fact that Defendants accept electronic and digital signatures from some, but not all, Floridians.

44.    The Wet Signature Requirement thus is the type of immaterial, formalistic requirement prohibited by the Civil Rights Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

a.    Declaring that the Wet Signature Requirement, Fla. Stat. § 97.053(5)(a)(8), and any other provisions requiring a voter to submit a voter registration application form with a wet signature, violate 52 U.S.C. § 10101(a)(2)(B);

b.    Permanently enjoining Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to the Wet Signature Requirement and/or requiring a voter to submit a voter registration application form with a wet-ink signature;

c.    Awarding Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws; and

d.    Granting such other and further relief as the Court deems just and proper.

Dated: March 16, 2023

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law

Justin Baxenberg*
Alexander F. Atkins*
Renata O'Donnell*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
jbaxenberg@elias.law
aatkins@elias.law
rodonnell@elias.law

*Counsel for Plaintiffs Vote.Org,
Florida Alliance for Retired
Americans, and Florida State
Conference of Branches and Youth
Units of the NAACP*

**Pro Hac Vice Applications
Forthcoming*

Respectfully submitted,

*/s/ Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No. 0184111
King, Blackwell, Zehnder
 & Wermuth, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com