**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

VOTE.ORG, *et al.*,

    *Plaintiffs*,

v.

                                   Case No. 4:23-cv-00111-AW-MAF

CORD BYRD, in his official capacity
as Florida Secretary of State, *et al.*,

    *Defendants*.

_____/

**FLORIDA SECRETARY OF STATE AND
TEN SUPERVISORS OF ELECTIONS' REPLY
<u>TO UNITED STATES' STATEMENT OF INTEREST</u>**

Pursuant to this Court's Order (ECF No. 122), Defendants, the Secretary of

State and the undersigned Supervisors of Elections, respectfully reply to Part C of the

United States' Statement of Interest (ECF No. 118).

<u>ARGUMENT</u>

The United States asserts that the National Voter Registration Act of 1993 (the

"NVRA") does not require an original signature and does not, therefore, establish the

materiality of an original signature. But that is beside the point. The NVRA is relevant

here because it confirms the materiality of signatures generally—a point that neither

the United States nor Plaintiffs appear to dispute. A signature on a voter-registration

application represents an oath or affirmation that all information contained in the application—information material to determining the applicant's eligibility—is true. § 97.052(2)(q), Fla. Stat. And the NVRA itself requires applicants to sign federal mail-in voter-registration applications, which renders signatures "automatically material." *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008). In their own way, Plaintiffs acknowledge the materiality of a signature in some form. ECF No. 101 ¶ 35 ("Plaintiffs do not through this action challenge the general requirement that an applicant must sign their application form.").

The question, then, is not whether a signature furnishes material information (it does), but whether the Materiality Provision denies states the choice of means by which to secure admittedly material information. It does not. The Materiality Provision does not deny states the right to select the method by which applicants swear to or affirm the truth of the information contained in their applications, or commit the choice of means to each applicant's preference or convenience. It does not entitle each applicant to decide whether he or she will make the oath or affirmation by original signature, digital signature, or stamped signature—or by seal, checkmark, thumbprint, or any other mark. To deny the State a choice of means to secure material information would prevent the establishment of any predictable rules and frustrate consistency in administration.

*Browning* is on point. There, a state law required voter-registration applicants to provide their driver-license numbers or the last four digits of their social-security numbers. 522 F.3d at 1155. These identification numbers were material information in the State's efforts to identify applicants and ensure that applicants are real people. *Id*. at 1174–75. The plaintiffs ultimately did not deny that information used to identify applicants was material, but insisted that the State's chosen means were burdensome and error-prone. *Id*. at 1175. They maintained that the Materiality Provision entitled applicants to select a different method to identify themselves, such as the presentation of a passport or military ID. Br. for Appellees at 18, 44, *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008), No. 07-15932, 2008 WL 838736. The court disagreed. As long as the information was material, the Materiality Provision did not deny states a choice of the means and methods by which applicants must furnish that information. The Materiality Provision does not impose a "least-restrictive-alternative test" that entitles each applicant to choose a different method of furnishing material information. 522 F.3d at 1175.

The same is true here. Nobody disputes that an oath or affirmation of the truth of information provided on voter-registration applications is material. The Legislature has selected the form of that oath or affirmation: an original signature. The Materiality Provision does not deny the Legislature that choice and entitle each applicant to make the oath or affirmation in the applicant's preferred form.

In *Diaz v. Cobb*, 435 F. Supp. 2d 1206, 1211–14 (S.D. Fla. 2006), the court upheld a requirement that voter-registration applicants check a box to affirm their citizenship. It did not invalidate that provision simply because some applicants might prefer to present naturalization papers to prove their citizenship. Similarly, in *Howlette v. City of Richmond*, 485 F. Supp. 17, 22–23 (E.D. Va.), *aff'd*, 580 F.2d 704 (4th Cir. 1978), the court affirmed a requirement that petition signatures be notarized to ensure that the signers were real people. The court did not strike the notarization requirement simply because a signer might instead wish to produce a passport to prove the signer's identity.

The Plaintiffs and the United States' position boils down to this: if a litigant can propose a different way to provide the same material information, then compliance with the means chosen by the State is immaterial. Under that interpretation, however, a state has no discretion to select the method by which material information must be provided. An applicant's total refusal to complete a voter-registration application form would be excused, as long as the applicant furnished a birth certificate, naturalization papers, a passport, a utility bill, or some combination of such documents sufficient to establish compliance with all conditions of eligibility. *Browning* makes clear that this position is wrong.

The State has decided that the oath or affirmation should be made in the form of an original signature. There are good reasons for that choice. For example, the State

4

relies on signature comparisons to confirm the identities of voters who cast vote-by-mail ballots, § 101.68(2)(c)1., Fla. Stat., or provisional ballots, *id.* § 101.048(2)(b)1., and voters who designate others to take possession of their vote-by-mail ballots from election officials, *id.* § 101.62(4)(c)4. The State could reasonably have concluded that an original signature facilitates these verifications better than a stamped signature or a digital signature of poor quality.

The State could also reasonably have concluded that legal formalities, including handwritten signatures, advance an important "cautionary function." Lon L. Fuller, *Consideration and Form*, 41 COLUMBIA L. REV. 799 (1941). The State could have concluded that a handwritten signature is more likely than other means to impress on the applicant the seriousness of the act that the applicant is about to perform and the gravity of the consequences of providing incorrect information—and therefore that a handwritten signature is the best security against inconsiderate action. The State was entitled to conclude that this "cautionary function" is not fulfilled in the same way when an applicant stamps an application or pastes a PDF image of a signature onto a digital form. *See* Juliet M. Moringiello, *Signals*, *Assent and Internet Contracting*, 57 RUTGERS L. REV. 1307, 1331 (2005) (explaining that a "click" does not serve the same "cautionary function" as a handwritten signature); Michael J. Hays, *The E-Sign Act of 2000: The Triumph of Function Over Form in American Contract Law*, 76 NOTRE

DAME L. REV. 1183, 1206 (2001) (explaining that "the click of a mouse is extremely casual and non-deliberative").

Indeed, the writing of a signature by hand not only furnishes information, but also is a solemn act—an act that for centuries has signified an individual's assent and affirmation. The Materiality Provision was intended to do away with requirements that unjustly deny the ballot to eligible voters—such as a requirement to calculate the number of days and months in a voter's age. *Browning*, 522 F.3d at 1173. It was not intended to deny states the freedom to ask applicants to sign their applications, even by hand.

The State bears no burden, however, to prove that its method is the best one or the only one. As the court in *Browning* concluded, the Materiality Provision neither permits nor requires courts to second-guess the merits of different methods of securing admittedly material information. *Id.* at 1175. It is enough that an original signature provides material information. The Materiality Provision does not require the State to leave the choice of means to each applicant and to accept that material information in whatever manner the applicant chooses to provide it. Just as the State was entitled to require applicants to provide identification numbers in preference to other forms of identification, it may require applicants to provide an original signature in preference to other forms of attestation, even if that requirement is not the least restrictive means. *Id.*

Because the Materiality Provision does not, as a matter of law, divest states of their discretion to select the manner in which material information must be furnished, Plaintiffs cannot prevail. Their pleading should therefore be dismissed with prejudice. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019) (explaining that a court need not grant leave to amend if a more carefully drafted complaint could not state a claim).

## CONCLUSION

For the reasons stated above and in the Secretary and ten Supervisors' Motion to Dismiss, ECF No. 112, Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief should be dismissed with prejudice.

/s/ *Nicholas J.P. Meros*
Nicholas J.P. Meros (FBN 120270)
*Deputy General Counsel*

**EXECUTIVE OFFICE OF GOVERNOR**
The Capitol, PL-5
400 S. Monroe Street
Tallahassee, Florida 32399
Phone: (850) 717-9310
Fax: (850) 488-9810
Nicholas.Meros@eog.myflorida.com

/s/ *Andy Bardos*
Andy Bardos (FBN 822671)
GRAYROBINSON, P.A.
301 South Bronough Street, Suite 600
Tallahassee, Florida 32301
Telephone: 850-577-9090
andy.bardos@gray-robinson.com

*Counsel for Supervisors Chris Anderson, Michael Bennett, Melissa Blazier, Brian Corley, Tommy Doyle, Joyce Griffin, Alan Hays, Leslie Rossway Swan, Leah Valenti, and Wesley Wilcox*

/s/ *Joseph S. Van de Bogart*
Joseph S. Van de Bogart (FBN 84764)
*General Counsel*
Ashley E. Davis (FBN 48302)
*Chief Deputy General Counsel*
W. David Chappell (FBN 120449)
*Assistant General Counsel*

**FLORIDA DEPARTMENT OF STATE**
R.A. Gray Building Suite 100
500 South Bronough Street
Tallahassee, Florida 32399
Phone: (850) 245-6536
Fax: (850) 245-6127
Joseph.Vandebogart@dos.myflorida.com
Ashley.Davis@dos.myflorida.com
David.Chappell@dos.myflorida.com

*Counsel for Secretary Cord Byrd*

8

## WORD-COUNT CERTIFICATE

Pursuant to Local Rule 7.1(F) and (I), undersigned counsel certifies that this memorandum contains 1,432 words.

/s/ *Andy Bardos*
Andy Bardos (FBN 822671)
GRAYROBINSON, P.A.

9